MARVIN PIERSON, ADMINISTRATOR OF THE ESTATE OF WILLIAM NUCKELS, DECEASED, AND JAMES EDWARDS, DOROTHY EDWARDS, RUTH EDWARDS, ROBERT EDWARDS, VIRGINIA EDWARDS, MINORS, BY SADIE EDWARDS, THEIR NEXT FRIEND, PROSECUTORS, v. NATIONAL FIRE PROOFING CORPORATION, DEFENDANT.

Submitted October 20, 1936—Decided February 13, 1937.

Before BROGAN, CHIEF JUSTICE, and Justices CASE and PERSKIE.

For the prosecutors, *W. Reading Gebhardt* (*Gebhardt & Gebhardt*).

For the defendant, *Clarence B. Tippett.*

The opinion of the court was delivered by

CASE, J. Prosecutors are the children of Frank Edwards, a half-brother of William Nuckels, the deceased employe.

Following the death of the employe, prosecutors filed their petition for compensation under the Workmen's Compensation act. The defendant moved to dismiss upon the ground that the claimants were half-nephews and half-nieces of the decedent and as such were not within the application of the statute. The deputy commissioner determined that the ground was well taken and dismissed the petition. The Warren Common Pleas, on appeal, affirmed. The record is before us on writ of *certiorari*. The question is here, as it was below, whether the claimants are within the statute.

Those who, on the death of an employe, are entitled to relief are defined in section 12. In the original statute the designated dependents were the widow, child or children, father, mother, grandparents, grandchildren and minor or incapacitated brothers and sisters. The classification was revised by chapter 174, *Pamph. L.* 1913, *p.* 302, which amended the classification in section 12 to read as follows:

"The term 'dependents' shall apply to and include any or all of the following who are dependent upon the deceased at the time of the accident or death, namely, husband, wife, parents, step-parents, grandparents, children, step-children, grandchildren, posthumous child, illegitimate children, brothers, sisters, half-brothers, half-sisters. Legally adopted children shall, in every particular, be considered as natural children  *  *  *."

The statute so remained until the 1919 amendment *infra*. The designations were precise and detailed. To parents the 1913 amendment added step-parents. To children it added posthumous children and illegitimate children. To brothers and sisters it added half-brothers and half-sisters. Legally adopted children were given *status*.

By chapter 93, *Pamph. L.* 1919, *p.* 266, "child *in esse*" was added following the word "grandchildren." So that by specific enumeration the statute was made to include a child, an adopted child, a child of one's spouse by an earlier marriage. a child born after the death of the employed parent and a child conceived but not yet born. It will be observed that the statute was similarly definite in designating step-

parents as well as parents, half-brothers as well as brothers and half-sisters as well as sisters. By the 1919 amendment the legislature further added in juxtaposition to "half-sisters" the words "niece, nephew;" and the question becomes—shall we read therein or add thereto the words "half-niece" and "half-nephew?"

The appellants argue first that a consideration of the history of section 12 of the act indicates that it includes nephews and nieces of the half-blood. Half-blood, as here applied, is a convenient rather than an accurate term. A child of one's full brother or full sister carries only half the blood of one's parents-common ancestors. That proportion is divided by two in the child of a half-brother or of a half-sister. The expressions "half-nephew" and "half-niece" are more accurate because they refer to persons who may be said to have only half the relationship of a nephew or of a niece. And these words are noted and defined by high lexicographical authority. Webster's New International Dictionary defines "half-nephew" to be "the son of a half-brother or half-sister" and "half-niece" to be "the daughter of a half-brother or half-sister." The precision with which the legislature divides, and includes the subdivisions of, other relationships throws into bold relief the limitation of the words now in controversy; particularly is this accentuated by the immediate collocation—"child *in esse,* posthumous child, illegitimate children, brothers, sisters, half-brothers, half-sisters, niece, nephew." The legislature chose to include half-brothers and half-sisters but to omit half-nieces and half-nephews. We must assume that it meant to do so. The history and physical aspects of the section lead us to a conclusion contrary to the assertion of the appellants' point.

Appellants next present that because some courts have refused to distinguish between kin of the half-blood and kin of the whole blood in passing upon the criminal aspect of intercourse between a man and a woman within statutorily prohibited degrees, therefore we, in construing the compensation statute, should hold that a half-nephew is not to be distinguished from a nephew, and a half-niece from a niece.

But such an argument would apply equally to an incestuous act between a man and his half-sister or, to state it contrariwise, between a woman and her half-brother; yet our legislature, in section 12, *supra,* has recognized the distinction between brother and half-brother and between sister and half-sister, in so far as the purposes of the Workmen's Compensation act are concerned, by naming both the whole relationship and the half relationship and bringing them both in. The argument thus presented by appellants must, of necessity, be directed towards ascertaining the working of the legislative mind; and we may not assume that that mind was working in opposite directions in the framing of the same sentence.

The third point is of a kind. It is that the next of kin of half-blood share equally with those of the whole blood under our statute of distribution (2 *Cum. Supp. Comp. Stat.,* p. 2629, § 146-169 III) and by the decisions bearing thereon and that, therefore, the judgment below should be reversed. A counter-poise is that under our Descent act (2 *Comp. Stat.* p. 1917), relations of the half-blood where they are meant to take are named so to do. To which may be added much that was said under the last point.

Finally, it is argued that the Workmen's Compensation act is a remedial statute and should be liberally construed. Our courts have so held (*Jersey City* v. *Borst,* 90 *N. J. L.* 454; *Combination Rubber Manufacturing Co.* v. *Obser,* 95 *Id.* 43; *affirmed,* 96 *Id.* 544; but that does not mean that every question of sufficient doubt to warrant argument is to be resolved in favor of the claimant even when his right to invoke the jurisdiction, that is to say, his status as a claimant, is the nub of the dispute. We are not forgetful of the decision of this court in *Newark Paving Co.* v. *Klotz,* 85 *Id.* 432; *affirmed,* 86 *Id.* 690, wherein it was held that step-children were to be accorded the position of children; but it is to be noted that although that case had arisen before step-children were included by mention in the statute an amendment making the inclusion had been enacted into law before the case was decided, and the court had the benefit of the then current thought of the legislature. Our courts later held (Mr. Justice Bergen in *Splitdorf Electrical Co.* v. *King,* 90 *Id.* 421;

*affirmed,* 92 *Id.* 524, on the question whether an illegitimate grandchild could claim under the statute) :

"The Workmen's Compensation act imposes new and extensive obligations upon the employer of workmen in favor of the latter's dependents and expressly defines who are to be included as dependents, among them being the illegitimate children of the workmen residing in his family, to whom he owes the duty of maintenance and to impose a further obligation on the employer, not provided for by the statute, would be legislation and not judicial construction. In the absence of anything to the contrary we must conclude that when the legislature made use of the descriptive term 'grandchildren,' it used it in its ordinary sense and as applicable only to persons who stood legally in that relation to the decedent workman, and not as intending to alter the common law rule by making one who could not stand in such relation a grandchild. The legislature had in mind the question of illegitimacy, for it provided for the illegitimate children of the decedent, but went no further, and we are now asked to supply what it omitted by construing the law to include among grandchildren those who have no such legal status. If the legislature had intended that the bastard children of a decedent workman's children were his dependents, it could readily have said so, and having omitted to include such persons among the class of dependents entitled to the benefit of the act, the court cannot supply the omission by what would clearly be the exercise of a legislative function."

If, with a statute so specific in the designation of those to whom it shall apply, we undertake to depart from the statutory designation, what. shall be our guide ? Inasmuch as the legislature has ordained that the benefits shall accrue to those who bear a certain relationship *and* are dependents and shall not hinge upon the single fact of dependency, we can see no other course than that the widening of the relationship must be by the legislature and not by the courts. We conclude, as did the deputy commissioner and the Pleas, that half-nieces and half-nephews are not dependents within the meaning of the statute.

Judgment below will be affirmed.