16860

MILLER v. SPRINGS COTTON MILLS *ET AL.*

(82 S. E. (2d) 458)

*Messrs. Hamilton & Hamilton* and *Charles W. McTeer,* of Chester, *for Appellant,*

*Messrs. Roddey & Sumwalt,* of Rock Hill, *for Respondent,*

April 15, 1954.

Oxner, Justice.

This is an appeal from an order of the Circuit Court reversing an award for compensation made by the Industrial Commission. The major question presented is whether the employee sustained an injury by accident arising out of and in the course of her employment.

Claimant was employed in the cloth room of the Eureka Plant of the Springs Cotton Mills. The mill operated a cafeteria in the same building for the convenience of the employees, most of whom ate there, although some brought their food from home. Claimant's hours of employment were from 6:00 a. m. to 2:00 p. m., with twenty minutes allowed for lunch. On October 26, 1951, she quit work at 11:50 a. m. and went to the cafeteria. She finished her meal fifteen minutes later and claims that she sustained an accidental injury as she arose from the table. Her description of the alleged accident is as follows:

"Q. After you finished eating lunch, what happened? A. I started to get up from the table and started falling to the right. My knee twisted, and I felt a sharp pain in my knee. I grabbed the table to keep from falling to the floor.

"Q. Did you get all the way up from the table? A. Yes, sir, finally, by holding on to the table. I had to stand there a few minutes.

"Q. Did you start falling to the right or left? A. To the right, when my knee twisted.

"Q. That threw the weight on which foot? A. On my right foot, it twisted my knee.

"Q. What happened to your knee? A. They said it was a ligament that got fastened under my knee cap.

"Q. I mean at that time, what happened? A. It just started hurting when it twisted, a sharp sudden pain struck my knee.

"Q. Why did you catch to the table? A. To keep from falling to the floor.

"Q. Would you have fallen if you had not grabbed the table with your hands? A. Yes, sir.

"Q. You did not actually fall on the floor? A. No, sir.

"Q. Did you work on, after that? A. I stayed about two hours after that.

"Q. Did your knee hurt during that time? A. Oh, it was in awful pain.

"Q. When did you stop work? A. At stopping time. I had finished my eight hours."

\* \* \*

"Q. Mrs. Miller, do you think of anything I have left out? A. No, sir, I just lost my balance and my knee twisted and I have been in pain ever since.

\* \* \*

"Q. You say you got up from the table? A. Yes, sir.

"Q. And lost your balance? A. Yes, sir.

"Q. And twisted your knee? A. That is right.

"Q. And that is how it happened? A. That is exactly how it happened.

"Q. And both your feet were flat on the floor? A. Yes, sir. It went just like that—(Snapping fingers)."

Claimant, who at the time of the accident was 43 years of age and weighed approximately 200 lbs., further testified that she had never had any previous trouble with her

knee. After the alleged injury, she spent many weeks in the hospital and finally an operation was performed. At the time of the hearing before the Industrial Commission, she had not been able to resume work. The record contains no medical testimony and, therefore, we have no way of knowing what caused the "twisting" of claimant's knee.

We do not think claimant has shown an injury by accident—the first requisite for the payment of compensation. The foregoing testimony rather indicates that the failure of claimant's knee to function normally was the cause of her near-fall and not the near-fall the cause of the injury to the knee. We have simply some internal failure or breakdown in the knee which might have happened at any time. The fact that it occurred in the cafeteria was purely coincidental. It would be wholly conjectural to say under the evidence before us that claimant's employment was a contributing cause of her injury. To sustain an award of compensation in the instant case would necessitate opening the floodgates and holding that every internal failure suffered by an employee in the course of his employment becomes an accident just because it happens. An injury of the kind before us has been characterized by the Supreme Court of Oklahoma as "a lamentable result of an ordinary employment of the body unattended by any accidental circumstances." *Phillips Petroleum Co. v. Eaves,* 200 Okl. 21, 190 P. (2d) 462, 463.

The foregoing conclusion is fully sustained by the case of *Burnett v. Appleton Co.,* 208 S. C. 53, 37 S. E. (2d) 269, which was cited with approval and followed in the recent case of *Fleming v. Appleton Co.,* 214 S. C. 81, 51 S. E. (2d) 363. In the *Burnett case* claimant testified that while pushing a truck loaded with cloth up a slight incline, described as "a rise of an inch in four or five feet," he "felt like something struck me or somebody struck me with a stick across the back of my right leg, and it caused a right smart of pain and began to swell then in just a few minutes'." He admitted that nothing came in contact with his leg and that there was

no visible evidence of injury, and stated that his physician had told him that " 'a blood artery clogged in my leg'." It was held that he did not sustain an injury by accident.

The remaining question is whether appellant is entitled to temporary total disability in accordance with the award of the Industrial Commission, notwithstanding the fact that said award has been reversed and we have held that appellant has not sustained an accidental injury. She contends that payment of compensation, at least to this extent, is mandatory under the construction given Section 72–356 of the 1952 Code in *Bannister v. Shepherd*, 191 S. C. 165, 4 S. E. (2d) 7.

The award of the hearing Commissioner, which was filed on February 4, 1953, directed that temporary total disability be paid from October 26, 1951, the date of the alleged accident, to June 18, 1952, the date of the hearing, and left the case open "for the purpose of taking additional testimony to determine the extent, if any, of permanent disability and disfigurement." This award was affirmed by the full Commission, one member dissenting, on May 8, 1953, and counsel given notice thereof on May 13th. On June 11, 1953, counsel for the employer and carrier served notice and grounds of appeal to the Court of Common Pleas and on the same day requested the secretary of the Industrial Commission to certify the record to that Court. The Commission did not do so, however, until June 30th. Two days later counsel for the employer and carrier requested the resident Judge to hear the appeal at his earliest convenience, but his other engagements prevented an immediate hearing. On July 12, 1953, counsel for claimant gave notice of a motion for an order requiring the employer and carrier to pay forthwith the accrued amount of temporary total disability. This motion was heard along with the appeal on July 31st. On August 27, 1953, an order of the Circuit Court was filed reversing the award of the Industrial Commission and holding that claimant had not sustained an accidental injury and, further, that assuming that there was an injury by accident

it did not arise out of and in the course of her employment. Having so found, the Judge concluded that it was unnecessary for him to pass upon the motion of claimant.

Section 72–356 allows either party to a dispute before the Industrial Commission to appeal to the Court of Common Pleas within thirty days after receipt of notice of the award, and further provides: "In case of an appeal from the decision of the Commission on questions of law, such appeal shall operate as a supersedeas for thirty days only and thereafter the employer shall be required to make payment of the award involved in the appeal or certification until the questions at issue therein shall have been fully determined in accordance with the provisions of this Title."

As pointed out in *Bannister v. Shepherd, supra,* the quoted statutory provision was intended to afford immediate relief to injured employees and to insure speedy disposition of appeals. It was evidently concluded that the party appealing from an award of the Industrial Commission should be able to get same heard in the Court of Common Pleas within thirty days. In *McDonald v. Palmetto Theaters,* 196 S. C. 38, 11 S. E. (2d) 444, it was held that this provision related solely to an appeal from the Commission to the Court of Common Pleas and had no application to an appeal from that Court to this Court. Neither that case nor *Bannister v. Shepherd, supra,* decided the question now presented.

In the *Bannister case,* the Circuit Court on appeal affirmed the award of the Industrial Commission, making the award enforceable by entry of judgment under the terms of Section 72–357 of the 1952 Code, if the employee so desired. The Insurance Company thereupon gave notice of intention to appeal to the Supreme Court and refused to make the payments provided for in the award. The appeal having not been perfected, several months later the employee obtained a rule to show cause why the Insurance Company should not forthwith pay the accrued benefits. At the time of the hearing by the Circuit Judge on the rule to show cause, the award could

have been enforced by entry of judgment and execution thereon. It was held that the award at this stage entitled the employee to payment of weekly compensation during the pendency of the appeal to the Supreme Court.

The instant case presents an entirely different situation. Here the Circuit Court reversed the award of the Industrial Commission. Appellant's award was neither "an award of the Commission unappealed from or an award of the Commission affirmed upon appeal," Section 72–357, and, therefore, incapable of enforcement by entry of judgment. While this Court has recently held that a formal entry of judgment is not necessary to enforce the terms of an award of the Industrial Commission, *McCants v. West Virginia Pulp & Paper Co.*, 223 S. C. 467, 76 S. E. (2d) 614, it is important to note in that case, as in the *Bannister case,* the award had attained the status of being capable of enforcement by such means.

Appellant's rule to show cause was heard along with the appeal on the merits. The award was reversed by the Circuit Court. At no time did there ever exist an award capable of enforcement by judgment and, therefore, not capable of enforcement by the more expedient means perhaps of a rule to show cause. The Circuit Judge, apparently sensing this, soundly determined that it was unnecessary for him to pass upon the rule. To require payment by rule to show cause of benefits accrued under an award of the Industrial Commission reversed by the Circuit Court would result in compelling payment under an award which was forever incapable of enforcement by judgment.

There is this further anomaly under appellant's view. When the award of the Industrial Commission was reversed by the Circuit Court, it became of no effect and was no longer in existence. Appellant is now asking for enforcement by rule to show cause of an award of the Industrial Commission which has been declared void. Suppose following the decision on the merits, the Circuit Court

had ordered payment of the award? Appellant would have become immediately bound to restore any payment so received, under the well-established principle that a party who has received payment under a judgment subsequently reversed must restore any advantages obtained thereby to his adversary. 3 Am. Jur., Appeal and Error, Sections 1191 and 1242; 5 C. J. S., Appeal and Error, § 1980. The foregoing principles have been applied in a number of decisions holding that where there has been an overpayment of compensation to an employee or a payment made through mistake or misrepresentation, the employee is bound to restore the money so received. *Samels v. Goodyear Tire & Rubber Co.,* 323 Mich. 251, 35 N. W. (2d) 265; *Danford v. Contract Purchase Corp.,* 333 Mich. 559, 53 N. W. (2d) 377; *Robin v. Brandin,* La. App., 45 So. (2d) 423; *Brophy v. Prudential Insurance Co. of America,* 241 App. Div. 306, 271 N. Y. S. 819; *Safway Steel Scaffold Co. v. Industrial Accident Commissions,* 55 Cal. App. (2d) 388, 130 P. (2d) 484; *State ex rel. Trent v. Pritt,* 134 W. Va. 516, 59 S. E. (2d) 890. Our own case of *Manning v. Gossett Mills,* 192 S. C. 262, 6 S. E. (2d) 256, does not call for a different conclusion since the payment there involved was a voluntary one.

There are a few cases holding that since there is no provision in the compensation act authorizing a commission or compensation board to compel the restitution of money erroneously paid under an award, it is without authority to do so. *Sassarro v. Wright Aeronautical Corporation,* 46 A. (2d) 52, 24 N. J. Misc. 57; *Parker v. Industrial Commission of Utah,* 66 Utah 256, 241 P. 362; *Ayers v. Public Service Co-ordinated Transport,* 196 A. 466, 16 N. J. Misc. 60, But the statutory powers of the Industrial Commission are not involved here.

It is neither logical nor just for a Court by rule to show cause to compel one person to pay money to another when the latter is at once obligated to return the money so received.

For the foregoing reasons, appellant, under the facts presented, is not entitled to payment of the award for temporary total disability.

Judgment affirmed.

STUKES, J., concurs.

BAKER, C. J., and TAYLOR, J., concur in part and dissent in part.

TAYLOR, Justice (dissenting in part).

I regret that I find myself in disagreement with that portion of the Opinion in this case which construes Section 72 –356, 1952 Code of Laws for S. C. The pertinent portion of which is:

" * * * In case of an appeal from the decision of the Commission on questions of law, such appeal shall operate as a supersedeas for thirty days only and thereafter the employer shall be required to make payment of the award involved in the appeal or certification until the questions at issue therein shall have been fully determined in accordance with the provisions of this Title."

The foregoing Opinion holds, in effect, that where an appeal by the employer and its carrier has been prosecuted with due diligence and the matter not disposed of within the 30 day period through no fault of appellants, they would be relieved of the burden of such payments as had been ordered by the Commission and quotes from *Greenville Baseball, Inc. v. Bearden, Sheriff*, 200 S. C. 363, 20 S. E. (2d) 813, for the proposition that the Courts are not always confined to the literal meaning of a statute but the real purpose and intention of the lawmakers will prevail.

This is one of those "hard cases which tend to make hard law." It is true that where such payments are made and, as in this case, where the award later was reversed, the employer and its carrier would have made payments which possibly could not be thereafter recovered. However, on the other hand should this Court hold that appellants may be

excused from making such payments on the grounds that the delay beyond the thirty day period was brought about through no fault of theirs, this Court will be faced, in practically every such case, with the impossible task of determining which party, if either, was responsible for the delay beyond the thirty day period and therein open the door to an abuse which the legislature intended to prevent when it wrote that section of the act in such clear and unambiguous language.

Fault in causing a delay is often a difficult and close question. If the Circuit Court must stop in the midst of an appeal and try such issue, it can only result in further delay. If fault of delay is an issue upon which payment must be made or denied, certainly the parties should be given an opportunity to submit testimony relative thereto and be heard in argument. Furthermore, the lower Court should determine the fault of delay which has not been done here. If the Circuit Court may try the issue of "whose fault caused the delay," then of course either party should be allowed to appeal the ruling on that issue before any compensation is paid. To complicate matters the fault issue would normally involve solely testimony of the attorneys if factual issues arise.

Under the Workmen's Compensation Act, both the employer and the employee surrender benefits enjoyed under the common law in exchange for other benefits gained under the act. The employer assumes the obligations imposed by the act as written, and this Court may not add to nor subtract therefrom under the guise of interpreting a provision of the act already declared by this Court to be unambiguous.

The language found in the case of *McDonald v. Palmetto Theaters,* 196 S. C. 38, 11 S. E. (2d) 444, 446, is equally applicable here:

"And there can be no doubt whatever, under the plain and explicit language of Section 60, that the claimant was entitled after the lapse of thirty days to have the award paid which had been made to him on July 7, 1938, of a weekly

sum extending back to September 2, 1937, notwithstanding the appeal to the Court of Common Pleas."

Also see *Bannister v. Shepherd*, 191 S. C. 165, 4 S. E. (2d) 7, 11, wherein it is stated:

"The Legislature has in clear and convincing language provided that an appeal shall only act as a supersedeas for a period of thirty days, whether or not this was a wise decision on the part of the General Assembly, it is not the province of this Court to say. This Court can only carry out the intention of the Legislature as expressed in the Act. * * * so it is apparent that the legislative purpose was to allow a supersedeas for only thirty days, which was neither unreasonable nor unconstitutional, * * *. * * * It must also be borne in mind that the Workmen's Compensation Act is a form of social legislation passed primarily for the benefit of the employee, and to prevent the burden of injured employees becoming charges upon society."

Quoting further from *Bannister v. Shepherd, supra,* we find the precise question now before us disposed of in the following language:

"The defendant takes the position that if it be required to make the payments provided for in the award and the Supreme Court should ultimately reverse the Order and judgment of this Court and set aside the award that it would have no way of recovering the payments finally determined not to be due and owing by it, and therefore if Section 60, supra, be so construed as to require the payments of such award during the pendency of its appeal that said Section would deprive it of the equal protection of law and would therefore be unconstitutional. * * *

"Upon consideration of Defendant's first ground of objection, at first glance it does seem unfair to require the payment of the award during the pendency of an appeal, especially so, when there is no way prescribed for its recovery in the event the award should be set aside."

The legislature could have allowed no supersedeas at all, or permitted one until all questions were concluded and could of course have permitted no appeal whatsoever. The subject was not overlooked; the legislature did not qualify the time limit as it might have done and it is not within the province of this Court to add this or other qualifications.

The legislative intent and language being clear and unambiguous, there is nothing for this Court to construe, 82 C. J. S., Statutes, § 311, p. 526. Once an award of the Industrial Commission is issued in favor of the claimant, thirty days thereafter the employee becomes a privileged suiter and occupies a position similar to that of a wife suing for alimony. See *Jeffords v. Jeffords,* 216 S. C. 451, 58 S. E. (2d) 731, and long line of decisions adopting the same reasoning. A wife may receive temporary alimony and attorney fees even though she may eventually lose the case for permanent alimony and attorney fees on the trial of the case on its merits. In like fashion, one may receive temporary benefits under the Workmen's Compensation Act even though he may eventually lose his case on the merits. And so it is not without precedent even under the common law, for one to receive temporary benefits and later lose the case on its merits; certainly this Court should not in effect nullify a clear and plain mandate of the statute which makes a provision similar in effect to one heretofore adopted by the Court of its own volition under the common law.

After thirty days from the time of the Commission's award the claimant was entitled to have the temporary total disability payments brought down to date. It should not have been necessary to rule the employer and the insurance carrier to show cause, for one of the purposes of the act is to avoid litigation rather than to encourage it.

The principle set forth in the leading Opinion would encourage "justifiable delay" in hopes of making restitution convenient to the employer. In Workmen's Compensation cases, this Court has not declared whether restitution is a

matter of right, a matter of discretion, or entirely unavailable to the employer and this question has not been raised in the appeal now before us; however, if it be a matter of discretion, then no discretion has been exercised by the Commission or by the lower Court. This Court should declare the law only and should not inject its own discretion here.

More persuasive still is the fact that even the respondent makes no reference in his brief to restitution, does not proceed on that theory, and does not bottom his claim on the law of restitution. Obviously the appellant has not been permitted to be heard on the issue and learns of the theory as applicable to this case first from this Court.

It may at first seem alarming that one who finally loses a case on the merits, may receive benefits during the course of the litigation but the administration of the law for the great mass of cases occurring annually should not be complicated and made difficult in order to bring about a desirable result in this one particular case. Doubtlessly the thirty day provision is a signal from the legislature to the litigants, to the Industrial Commission, and to the lower Court, to proceed with dispatch in order that the employee may receive prompt compensation and be not a charge on the public.

While under the ruling I would adopt, occasionally as here an employee might draw comparatively small amounts of compensation to which he is later adjudged not entitled, such would be more than offset by the fact that adherence to the rule as written would assure prompt hearings and prompt payments in the great multitude of cases wherein the claims are just.

This case is difficult because ordering temporary disability compensation at this time comes after the case is lost on its merits. That which makes it difficult is the fact that the employer and insurance carrier did not pay according to the law when the compensation was due under the act.

This case cannot be distinguished from the *Bannister case* by the fact that in that case the employee won the decision

in the Circuit Court, whereas here the employee lost in the Circuit Court. The Opinion overlooks the fact that under the statute the employee here was entitled to be paid before the Circuit Court ruled upon the appeal. If the payment of temporary disability compensation must await the result of the appeal, then the statute is entirely nullified. If the cases are to be decided on the basis of who won the appeal in the Circuit Court, then every employee must wait until the appeal is decided.

The number of cases appealed to the Circuit Court and not heard within thirty days must be infinitesimally small; experience will show that of such cases most are affirmed. The benefits (of the rule to which I would adhere) to the great mass of injured employees obscures the meager possibility that in an extremely extraordinary situation some employee might gain small benefits as a result of a ruling later made by the Circuit Court reversing the Commission. If the payments are not made in compliance with the statute, the worker will suffer and, if made and the award later reversed, the employer and its carrier will suffer; therefore, there is no perfect solution but it can be reasonably assumed that the insurance carrier took under consideration this provision of the act at the time of determining the employer's premium rate and that the legislature was cognizant of the import of the words used in the act.

I would affirm that portion of the Order reversing the award of the Industrial Commission but would hold that the employee was entitled to be paid after the thirty-day supersedeas provided by the statute and that the Circuit Judge should have ordered the same.

. BAKER, C. J., concurs.